Jenna F. Karadbil
jfk@pillsburylaw.com
California State Bar No. 213574
PILLSBURY WINTHROP SHAW
PITTMAN LLP
1540 Broadway
New York, New York 10036
Telephone: (212) 858-1000
Facsimile: (212) 858-1500

Callie A. Bjurstrom
callie.bjurstrom@pillsburylaw.com
California State Bar No. 137816
PILLSBURY WINTHROP SHAW
PITTMAN LLP
501 West Broadway
San Diego, California 92101
Telephone: (619) 234-5000
Facsimile: (619) 236-1995

Attorneys for Plaintiff
MOUNT HAMILTON PARTNERS, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MOUNT HAMILTON PARTNERS, LLC, | Case No.: 3:12-CV-1698-SI |
| Plaintiff, | **MOUNT HAMILTON PARTNERS, LLC'S OPENING CLAIM CONSTRUCTION BRIEF** |
| vs. | |
| GOOGLE INC., | |
| Defendant. | |
| MOUNT HAMILTON PARTNERS, LLC, | Case No. 3:12-CV-1700-SI |
| Plaintiff, | |
| vs. | |
| GROUPON, INC. | |
| Defendant. | |

1
2

## Table of Contents

Page

I.    INTRODUCTION ...................................................................................1

II.   BACKGROUND ....................................................................................2

    A.  Mount Hamilton's Prior Patents .............................................2

    B.  The '334 Patent ........................................................................3

III.  LAW OF CLAM CONSTRUCTION ...................................................3

    A.  Courts Look to the Ordinary and Customary Meaning of Claim Terms ......3

    B.  The Supporting Disclosures Set the Boundaries for Claim Terms ................4

IV.   CLAIM INTERPRETATION FOR CLAIM TERMS AND PHRASES
      OF THE '334 PATENT ........................................................................5

    A.  Periods of Peak Demand .........................................................6

    B.  Periods of Non-Peak Demands/Non-Peak Demand Periods ............................7

    C.  Modules Configured to/Module is Configured to ..............................9

    D.  Website ...................................................................................10

    E.  Concomitantly Presents to a User via the/a Website ......................12

    F.  In Response to Receipt of a/the Received User Requests for Incentives ......13

    G.  Restrictions ...........................................................................14

    H.  Correspond/Corresponding To ............................................15

    I.   Responsive to a First Restaurant/Business of the Set of
       Restaurant/Businesses Having a Different Non-Peak Demand Period than a
       Second Restaurant/Business of the Set of Restaurant/Businesses ................16

    J.  User Requests are Received for Incentives for Dining/to Purchase a Service17

V.    CONCLUSION ....................................................................................19

CLAIM CONSTRUCTION BRIEF
CASE NOS.: 3:12-CV-1698-SI; 3:12-CV-1700-SI

1

# TABLE OF AUTHORITIES

2

<u>**Page(s)**</u>

3

**Cases**

4

*Markman v. Westview Instruments, Inc.,*
5
   52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996)........................... 2, 3, 5
6
*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005) ...................................................................... 2, 3, 4, 5

7
*Renishaw PLC v. Marposs Societa' Per Azioni,*
   158 F.3d 1243 (Fed. Cir. 1998) ...................................................................................... 4
8
*SciMed Life Sys., Inc. v. Adv. Cardiovascular Sys., Inc.,*
   242 F.3d 1337 (Fed.Cir.2001) ........................................................................................ 4
9
*Springs Window Fashions LP v. Novo Indus., L.P.,*
10
   323 F.3d 989 (Fed. Cir. 2003) ........................................................................................ 2
11
*Teleflex, Inc. v. Ficosa North America Corp.,*
   299 F.3d 1313 (Fed.Cir. 2002) ....................................................................................... 4
12
*Vitronics Corp. v. Conceptronic, Inc.,*
   90 F.3d 1576 (Fed. Cir. 1996) ........................................................................................ 5

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to Patent L.R. 4-5(a) and this Court's Amended Case Management Order, Plaintiff Mount Hamilton Partners, LLC ("Mount Hamilton") hereby submits its Opening Claim Construction Brief for United States Patent Number 7,904,334 ("the '334 Patent").

## I.  INTRODUCTION

In general, the invention of the '334 Patent relates to more intelligent ways for restaurants and other businesses that experience periods of peak demand (*e.g.*, when tables are generally full or a waiting list exists) and non-peak demand periods (when a restaurant has more seats than customers) to offer incentives to users to reduce excess capacity. The invention recognizes that if a coupon or discount is good at times when a restaurant is already busy (peak demand periods) this is counterproductive. In such cases restaurants are already at or near capacity and there is no need to reduce the price via discounts or coupons to fill seats. As a corollary, when a restaurant has excess capacity (non-peak demand periods) it loses revenue due to empty seats.

Some restaurants have offered discounts to all customers at certain times. For example, some restaurants may offer a discount to all customers during certain periods (e.g., 4-7 pm on a given weekday). This too is counterproductive since some customers (e.g., a family with kids) may prefer to dine at that time even without an incentive.

One aspect of the invention avoids these problems by providing incentives to users who request one, so that the incentives designed to attract patrons during non-peak demand periods reach users interested in using them. Another aspect of the invention relates to enabling each restaurant to dynamically set rules to determine when they will offer incentives and/or vary the value of the incentive based on their historical peak and non-peak demand periods.

Against this contextual backdrop, it is clear the intrinsic evidence provides the rules by which the '334 Patent should be construed. The specification of the '334 Patent sets forth clear, unambiguous meanings of the disputed claim terms and phrases. These definitions are also supported by the prosecution history of the '334 Patent and their plain meaning.

Claim construction allows the parties to assist the Court with its obligation to construe, as a matter of law, the asserted claims of the '334 Patent. *See e.g., Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996). The rules governing such construction rely primarily on the intrinsic record, including the written record of the proceedings in front of the U.S. Patent and Trademark Office ("PTO"), the drawings and written descriptions set forth in the patent, as well as the claims themselves. The specification is usually dispositive and the "single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc). The intrinsic record sets forth the patentee's "representations concerning the scope and meaning of the claims," and "competitors [] are entitled to rely on those representations when ascertaining the degree of lawful conduct." *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003).

Mount Hamilton's proposed claim constructions, as described herein and as set forth in the Parties' Joint Claim Construction Chart and Prehearing Statement as amended and re-filed on March 4, 2013, are true to the specification, the ordinary meaning of the claim terms as understood by one of ordinary skill in the art at the time of filing, and reflect the meaning of the claim terms when understood in the context of the invention as a whole. Accordingly, the Court should adopt Mount Hamilton's proposed constructions, as they are properly based in and supported by the intrinsic evidence.

## II.  BACKGROUND

### A.  Mount Hamilton's Prior Patents

Mount Hamilton has a prior patent and pending application in this same family of online incentives, U.S. Patent No.6,741,969 ("the '969 patent") and Application Serial No. 09/461,336 ("the '336 Application").

### 1.  The '336 Application

The '336 Application was filed on December 15, 1999, and is currently pending. *See* Declaration of Callie A. Bjurstrom ("Bjurstrom Decl."), Exhibit 1 (the '336 Application). The '336 Application lists Dahzi Chen, Elayna Berean, and Mayank Patel as inventors and is

entitled "SYSTEM AND METHOD FOR REDUCING EXCESS CAPACITY FOR RESTAURANTS AND OTHER INDUSTRIES DURING OFF-PEAK OR OTHER TIMES." *See id*. Mount Hamilton is the owner of the '336 Application.

2.   The '969 Patent

The '969 Patent was filed on May 30, 2000 and issued on May 25, 2004. *See* Bjurstrom Decl. Exhibit 2 (the '969 Patent). The '969 Patent lists Dahzi Chen and Elayna Berean as inventors and is entitled "System and method for reducing excess capacity for restaurants and other industries during off-peak or other times." The owner of the '969 Patent is Mount Hamilton. *See id*, at Ex. 3 (assignment record). The '969 Patent is a continuation-in-part of the '336 Application.

**B.   The  '334 Patent**

Application Serial No. 10/849,935, ("the '935 application"), which later issued as the '336 Patent, was filed on May 21, 2004 and issued on March 8, 2011. *See id.* at Ex. 4 (the '334 Patent). The '334 Patent is a continuation of the '969 Patent, which is a continuation-in-part of the '336 Application. The '935 Application was filed with 48 claims. The '935 Application is attached as Exhibit 5 to the Bjurstrom Declaration. Also included as Exhibit 5 are excerpts from the prosecution file history for the '334 Patent.

**III.   LAW OF CLAM CONSTRUCTION**

**A.   Courts Look to the Ordinary and Customary Meaning of Claim Terms**

Claim construction is a matter of law for the Court to decide. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996). Claim construction involves considering "the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Phillips*, 415 F.3d at 1314. It is a "bedrock principle" of patent law that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Id.* at 1312. However, claims "must be read in view of the specification, of which they are a part." *Id.* at 1315.

It is well settled that "the words of a claim" are generally given "there ordinary and customary meaning" which is "the meaning that the terms would have to a person of ordinary skill in the art in question at the time of the invention. *See id*. at 1312-13.  To determine this meaning, the Court should "review the same resources as would that person," meaning "the patent specification and the prosecution history." *Id*. at 1313.   The ordinary meaning of a term cannot be viewed alone; it must be viewed in light of the written description and the prosecution history. *See id*. at 1313.

**B.      The Supporting Disclosures Set the Boundaries for Claim Terms**

Claims "must be read in view of the specification, of which they are a part." *Id*. at 1315 (citation omitted).   The specification "is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id*. at 1315 (citations omitted).  "Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim.  The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id*. at 1316.

While the claims must be read in view of the specification, the limitations from the specification are not to be read into the claims absent the inventor's express intention to do so. *Teleflex, Inc. v. Ficosa North America Corp.,* 299 F.3d 1313, 1326 (Fed.Cir. 2002).  Just because the claims are interpreted in view of the specification, does not mean that everything expressed in them must be read into the claims. *Id*. (Citation omitted).  Claims are not limited to the disclosure in the specification. *SciMed Life Sys., Inc. v. Adv. Cardiovascular Sys., Inc.,* 242 F.3d 1337, 1340 (Fed.Cir.2001); *banc*); *Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998).  Indeed, it is a "cardinal sin" of claim construction to import limitations from the written description into the claims. *SciMed*, 242 F.3d 1340.

The context of a claim term and the way in which it is used can also be "highly instructive" as to its meaning including how the term is used in other claims, which can be a "valuable" source of "enlightenment as to the meaning of a claim term." *See id*. at 1314.  The

1 usage of a term in one claim can often provide the meaning of the same term in another

2 claim. *See id.* Further, differences among claims help determine the meaning, as "the

3 presence of a dependent claim that adds a particular limitation gives rise to a presumption

4 that the limitation in question is not present in the independent claim." *Id.* at 1314-15

5 (citations omitted).

6      If intrinsic sources are ambiguous, a court may also consider extrinsic evidence, i.e.,

7 evidence external to the patent and prosecution history, to assist in understanding the patent

8 and correctly determine the meaning of the language used in the claims of the patent.

9 Examples of extrinsic evidence include expert testimony and technical treatises, articles, and

10 dictionaries. *Markman*, 52 F.3d at 980, *aff'd* by 517 U.S. 370 (1996). However, it is

11 improper for a court to rely on extrinsic evidence in construing claim language if the intrinsic

12 evidence is clear. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583 (Fed. Cir.

13 1996).

14      Defendants improperly attempt to unduly limit the scope of specific terms to be

15 construed. In some cases, their proposed interpretation of the disputed term improperly

16 includes other terms recitated elsewhere in the claim. In other cases they improperly read

17 limitations into the claim terms based on disclosure from the specification and/or words

18 external to the plain meaning of the terms and the intrinsic evidence**.**

19      Mount Hamilton's proposed claim constructions for the terms at issue reflect the plain

20 meaning of the terms as understood by one of ordinary skill, depict the patentee's invention

21 and comport with the intrinsic evidence including the claims, specification and file history,

22 and should be adopted.

23 **IV.**    **CLAIM INTERPRETATION FOR CLAIM TERMS AND PHRASES OF**

24        **THE '334 PATENT**

25      The terms and phrases illustrated below are the terms and phrases to which the parties

26 could not reach an agreement. Mount Hamilton has highlighted specific words in each of the

27 limitations to indicate which terms the parties agree should be construed at the Markman

28 phase. Due to the length and repetitive nature of the claims, only short excerpts and

examples have been provided within the tables below, rather than the entire claim language, which can be found within the '334 Patent (Ex. 4 to the Bjurstrom Declaration).

**A.**     Periods of Peak Demand

| Claim | Mount Hamilton's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| Claims 1, 8, 11, 14<br><br>A computer-implemented system/method for reducing excess capacity for one or more restaurants/businesses in an industry that experience **"periods of peak demands"** and periods of non-peak demands… | "periods where demand for a service is relatively high" | Indefinite, alternatively, "periods of time designated by a restaurant/business as busy" |

Defendants' claim that the phrase "periods of peak demands" is indefinite, however, the specification and the '334 Prosecution History clearly set forth ample evidence as to the meaning of that phrase.

Mount Hamilton's proposed construction is consistent with the plain meaning of the words in the phrase and the context in which the phrase is used in the claims. Further, it is supported by intrinsic evidence, including the specification.  Setting aside recitation of "periods of," the proposed construction essentially defines "peak demand" as "demand for a service being relatively high."

Further, the intrinsic evidence, including the specification and the '334 Prosecution History, support Mount Hamilton's proposed construction.  The specification states that "off peak" hours/days occur when excess capacity is relatively high, resulting in lost revenue. (*See*, *e.g.*, Bjurstrom Decl., at Ex. 4, 1:27-36; 8:15-27; and 12:45-51).  "During certain periods there is greater demand for those seats than others. At some times there are people waiting to get seated (for example, on weekend evenings during dinnertime)…." *Id.*, at 1:30-33. Additionally, the specification notes that incentives may be offered to customers that incentivize dining during days and/or times that are typically off peak in order to increase the

number of patrons (and reduce capacity) during the typically off peak days and/or times. (*See id.*, *e.g.*, 1:51-56; 8:15-27; 8:45-46; 18:31-36; and 19-64-20:11). For example, "some restaurants may have excess capacity on Monday-Thursday nights between 4 p.m. and 7 p.m." and "[t]his results in empty seats and lost revenue." *Id.*, at 8:20-22.

During prosecution, the Examiner repeatedly indicated that a person of ordinary skill in the art would appreciate that peak demand hours at a restaurant occur at times when patrons are more likely to be eating at the restaurant. (*See id.* at Ex. 5, *e.g.*, 6/2/2008 Office Action, p. 9; 11/12/2008 Examiner's Answer, pp. 11-12; 7/7/2009 Office Action, pp. 13-14). For example, in the 6/2/2008 Office Action, the Examiner states:

> …a restaurant located in a mainly business district may experience peak demand hours from 11:00 a.m. to 2:00 p.m. when the office employees are eating lunch, and experience very low demand during the rest of the day or even close by 3:00 p.m. Meanwhile, a restaurant located inside a shopping mall may experience peak demand hours during the evening and/or on weekends, while shoppers are more likely to be in the shopping mall.

*Id.*, at p. 9. Thus, times at which patrons are more likely to be eating at the restaurant (*e.g.* "peak demand hours," as described by the Examiner) would be times at which demand for service by the restaurant is relatively high. Simply put, the specification and the '334 Prosecution History make clear that a premise for the invention is that there is little or less need to incentivize users when there is already peak demand or no excess capacity (e.g., when restaurant tables are typically full or there is a waiting list). Both the specification and the '334 Prosecution History provide support for Mount Hamilton's proposed construction, thus not only is the phrase not indefinite, there is also no need to resort to extrinsic evidence to construe it. Accordingly, the Court should adopt Mount Hamilton's proposed claim construction.

**B.    Periods of Non-Peak Demands/Non-Peak Demand Periods**

| Claim | Mount Hamilton's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| Claims 1, 8, 11, 14<br><br>A computer-implemented | "periods where demand is | Indefinite, alternatively, "periods of |

| system/method for reducing excess capacity for one or more restaurants/businesses in an industry that experience periods of peak demands and periods of **"non-peak demands"**…<br><br>incentives with restrictions specifying valid dates and/or times that correspond to **"non-peak demand periods"** of the restaurants/businesses | below peak demand" | time designated by a restaurant/business as not busy" |
|---|---|---|

Defendants' claim that the phrase "periods of non-peak demands" is indefinite. However, the specification and the '334 Prosecution History clearly set forth ample evidence as to the meaning of that phrase.

Mount Hamilton's proposed construction is consistent with the plain meaning of the words in the phrase and the context in which the phrase is used in the claims. Further, it is supported by intrinsic evidence, including the specification.

With the addition of the prefix "non" to "peak," the plain meaning of the disputed phrase is literally "*not* peak demand periods." Periods of "not peak demand" would include any period when there is relatively more capacity than there are customers (*e.g.*, when there are more seats than customers to fill them). Mount Hamilton's proposed construction is consistent with the plain meaning of the terms, and the context in which the phrase is used.

Moreover, as discussed above with respect to "peak" periods, the intrinsic evidence includes several citations in which off-peak hours/times are described as times at which there is a relatively high excess capacity at a restaurant/business (*See* Bjurstrom Decl. at Ex. 4, *e.g.*, 1:27-36; 8:15-27; and 12:45-51). For example, the restaurant/business "may want to offer higher discounts when a potential customer indicates an off[non]-peak" time, such as offering a discount for any patron who specifies a time "before 5:00 p.m. and after 3:00 p.m., on a Sunday or a weeknight." *Id.*, at 18:33-36. The specification clearly recites that restaurants/businesses "may desire to reduce excess capacity during off [non] peak times

(e.g., hours, months, seasons, etc.)." *Id.* at 19:64-66.

Thus, Mount Hamilton's proposed construction of "periods where demand is below peak demand," fits squarely within the recitations in the specification.  Both the specification and the '334 Prosecution History provide support for Mount Hamilton's proposed construction, thus not only is the phrase not indefinite, there is also no need to resort to extrinsic evidence to construe it.  Accordingly, the Court should adopt Mount Hamilton's proposed claim construction.

**C.      Modules Configured to/Module is Configured to**

| Claim | Mount Hamilton's Proposed Construction | Seirus' Proposed Construction |
|---|---|---|
| Claims 1, 8, 11, 14<br><br>a registration **"module configured to"** obtain information…<br><br>a request **"module configured to"** present an interface…<br><br>Claims 1, 2, 8<br><br>the incentive **"module is configured to"** provide/set the restrictions on the incentives… | "components which performs a defined task" | "discrete source code unit that, when executed, must" perform the specified function |

Mount Hamilton's proposed construction is consistent with the plain meaning of the words in the term and the context in which the term is used in the claims. Further, it is supported by intrinsic evidence, and, although not needed for construction, the extrinsic evidence as well.

Mount Hamilton's proposed construction of "components which performs a defined task" is consistent with the usage of the word "module" in the specification.  For example, the '334 Patent states:

> Previous customers may proceed directly to another module to begin use of the system without re-registering multiple times.

Bjurstrom Decl., at Ex. 4, 10:38-40. The specification also includes other recitations that would be inconsistent with Defendants' proposed construction which is restricted to a definition narrower than "components which perform defined tasks." *See id.*, at 12:16-18 ("user may enter various dining parameters associated with the request for an incentive, *at* dining parameters module") (emphasis added) and 13:30-31 ("[o]nce the user has selected an offer displayed *in* the offer(s) display module") (emphasis added). Mount Hamilton's proposed construction is further consistent with recitations in the specification that refer to both "modules" that are implemented in computer source code and "modules" that are not restricted to merely computer source code. *See id.*, at 8:28-33 and 10:14-22.

Although not required due to the abundant guidance set forth in the specification, the Collins English Dictionary defines the word "module" as follows:

> a self-contained unit or item, such as an assembly of electronic components associated wiring or a segment of computer software, which itself performs a defined task and can be linked together with other such units to form a larger system.

*See* Bjurstrom Decl., at Ex. 6. This extrinsic definition supports Mount Hamilton's proposed construction, which would include segments of computer software, but ***would not be limited*** to include ***only*** those segments.

Thus, Mount Hamilton's proposed construction is consistent with the plain meaning of the term, and is supported by the specification and the extrinsic evidence. Accordingly, the Court should adopt Mount Hamilton's proposed claim construction.

**D.     Website**

| Claim | Mount Hamilton's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| Claims 1, 8, 11, 14<br><br>computer program modules corresponding to a **"website"** | "collection of files and related resources accessible through the World Wide Web and organized under a | "a group of documents identifiable by respective URLs and which require a Web browser and Internet connection to be displayed on a user device" |

| present an interface to a user via the **"website"** | particular domain or set of related domains" |  |
|---|---|---|

Mount Hamilton's proposed construction is consistent with the plain meaning of the term and the context in which the term is used in the claims. Further, it is supported by both intrinsic as well as extrinsic evidence.

The parties' proposed constructions are each essentially derived from two different extrinsic sources, Mount Hamilton's citation from the Encyclopedia Britannica and Defendants' citation from The Facts on File Dictionary of Computer Science 2001. The Court should examine the substantive differences between the proposed constructions in order to determine which definition is proper

Mount Hamilton's proposed construction states that the website is made up of a "collection of files and related resources."  This is consistent with the plain meaning of the term as well as the meaning of the term and context as set forth in the specification. Conversely, Defendants' proposed construction states that a website is made up of "documents."  The term "document" implies a textual file or other textual unit of information, which is only one type of content that could be included in a website.  The restriction to "documents" as opposed to files improperly restricts the proposed construction to make it far more narrow than that which is claimed in the '334 Patent.  There is no basis in the specification or anywhere else in the file history to indicate such a narrow interpretation is proper.

Further, as of the priority date of the claimed invention, the ordinary meaning of a website would necessarily include various types of content such as images, video, audio, and text. Additionally, at that time some websites included scripts, applets, and/or other resources that were downloaded to and run on user devices that display the output of such resources. Mount Hamilton's proposed construction accounts for these various forms in which the content of websites came – Defendants' does not.

Moreover, Mount Hamilton's proposed construction states that the website is "accessible" through the Internet, rather than requiring a web browser and an Internet

connection, as set forth in Defendants' proposed construction.  Defendant's proposal is, again, overly restrictive because there can easily be websites that do not require an Internet connection to be viewed. For example, files and related resources associated with a website are frequently cached locally on user devices, and could be accessed from this cache, at times, without an active Internet connection.  Additionally, a device that is actually hosting a website could access the website without an Internet connection.

In addition, Mount Hamilton's proposed construction specifies that a website be "accessible" through the Internet, but there is no restriction with respect to how it is actually accessed, or whether this is the only means for access.  Because Defendants' proposed construction includes an unduly limiting exclusive mechanism for accessing the website, as opposed to a permissive mechanism for accessing the website, Defendant's proposed construction is improper and does not accurately reflect how websites work, nor how the term is used within the '334 Patent.  Accordingly, the Court should adopt Mount Hamilton's proposed claim construction.

## E.    Concomitantly Presents to a User via the/a Website

| Claim | Mount Hamilton's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| Claims 1, 8, 11, 14<br><br>an incentive module configured to **"concomitantly present to a user via the website"** …a plurality of incentives | "concurrently present via the website" | Indefinite, alternatively, "presenting associated incentives via the website" |

Defendants' claim that the phrase is indefinite is incorrect, as the specification and the '334 Prosecution History clearly set forth ample evidence as to the meaning of the phrase.

Mount Hamilton's proposed construction is consistent with the plain meaning of the words in the phrase and the context in which the phrase is used in the claims. Further, it is supported by intrinsic evidence, including the specification and the '334 Prosecution History, and, although not needed for construction, extrinsic evidence.

The specification describes the concurrent presentation of multiple offers and applicable incentives to the user. *See* Bjurstrom Decl., at Ex. 4, 18-65-67 ("the one or more offers and applicable incentives may be displayed to the user. The user may then select the desired restaurant and incentive"). This presentation facilitates selection of a desired restaurant and incentive by the user, thus presenting them in concurrent fashion.

Additionally, during prosecution, the Examiner alleged that the specification did not provide support under 35 U.S.C. § 112(1) for the recitation of concomitant display of incentives from a plurality of restaurants. *See* Bjurstrom Decl., Ex. 5 (9/23/10 Response, p. 38). The patentee responded by citing a portion of the specification (reproduced in the quotation above) which provided support for concurrent display of incentives from a plurality of restaurants that would facilitate selection by the user of a desired restaurant and incentive. In response, the Examiner withdrew the rejection. *See id*. Including Notice of Allowability also attached at Exhibit 5.

The proposed construction interprets "concomitantly" to mean "concurrently" which is consistent with the common and ordinary meaning of "concomitantly," as, for example, is set forth by extrinsic evidence. *See* Bjurstrom Decl., at Ex. 7 ("occurring or existing concurrently"). Based on the plain language of the claim, the concomitant display refers to the current display of multiple offers or incentives.

Thus, Mount Hamilton's proposed construction is consistent with the plain meaning of the terms, and is supported by the specification, the '334 Prosecution History, and the extrinsic evidence. Accordingly, the Court should adopt Mount Hamilton's proposed claim construction.

**F.     In Response to Receipt of a/the Received User Requests for Incentives**

| Claim | Mount Hamilton's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| Claims 1, 11, 14<br><br>one or more computer program modules configured to concomitantly present to the user via the website, | "to take action based on a user request for incentives" | "processing using the received request submitted by a user for incentives" |

| "in response to the received user request for incentives" | | |
|---|---|---|

Mount Hamilton's proposed construction is consistent with the plain meaning of the words in the phrase and the context in which the phrase is used in the claims. Further, it is supported by intrinsic evidence.

Mount Hamilton's proposed construction is consistent with the plain meaning of "in response to," as an action performed "in response to" a stimulus would ordinarily be said to have been performed "based on" the stimulus.

The specification of the '334 Patent states that a user receives offers "in response to [a] request for incentives." *See* Bjurstrom Decl., at Ex. 4, 23:1-4. Simply put, the user can input a request and if and when a restaurant makes an offer available it is thereafter provided to a user. *See id*. The use of this term in the specification is consistent with the interpretation that the offers are received because an action was taken based on a request for incentives. Namely, the action taken was to provide offers to the user. For example, a user may make a request on Monday for an incentive to dine on Thursday. A restaurant may not currently have an incentive that Monday, but may decide to offer one before Thursday. Thus, an incentive may be provided in response to that request.

In contrast, the Defendants read into the claim that the system processes the request. That distorts the plain language. The plain language of the claim does not specifically require the request be processed but rather that incentives be displayed in response to the request.

Thus, Mount Hamilton's proposed construction is consistent with the plain meaning of the phrase, and is supported by the specification. Accordingly, the Court should adopt Mount Hamilton's proposed construction.

## G.    Restrictions

| Claim | Mount Hamilton's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| Claims 1, 2, 8, 11, 14 incentives are subject to | "rules or conditions (e.g., | "rules or conditions (including days |

| **"restrictions"** | days and/or times that an incentive can be redeemed during the life of the incentive" | and/or times that an incentive can be redeemed during the life of the incentive" |
|---|---|---|

The parties agree that the term "restrictions" should be interpreted as meaning "rules or conditions."  However, they disagree as to the parenthetical description of such "rules or conditions." Mount Hamilton's proposed construction is consistent with the plain meaning of the term, and the intrinsic evidence.

In the claims, the "restrictions" are rules or conditions to which the incentives are subject.  Although the restrictions are sometimes recited as "specifying valid dates and/or times," there is no requirement in the word "restrictions" that the rules or conditions ***must*** specify valid dates and/or times.  That the restrictions include "specify[] valid dates and/or times" is a function of this later recitation, and not from the word "restrictions" itself.  As such, Defendants' proposed construction, which requires that the rules or conditions *must* include specific days/times is incorrect, as it is more restrictive than what is claimed.

For example, the specification describes examples of restrictions to which incentives are subject that specify valid dates and/or times.  *See*, Bjurstrom Decl., at  Ex. 4,  *e.g.*, 4:33-36; 8:15-22; and 13:19-22.  However, each of these portions of the specification provides that the examples of restrictions specifying valid dates and/or times are illustrative, and there is *no requirement* that restrictions *must* include valid dates and/or times. *See id.*

Therefore, Mount Hamilton's proposed construction is consistent with the plain meaning of the term, and is supported by the specification.  The Court should adopt Mount Hamilton's proposed claim construction.

## H.    Correspond/Corresponding To

| Claim | Mount Hamilton's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| Claims 1, 7, 8, 11, 14  a server configured to execute computer program modules **"corresponding to"** a website | "relating to" | "match[ing]" |

Mount Hamilton's proposed construction is consistent with the plain meaning of the words in the term and the context in which the term is used in the claims. Further, it is supported by intrinsic evidence, and, although not needed for construction, extrinsic evidence.

The term "corresponding to" should be construed to mean "relating to" as this is consistent with other recitations of "corresponding to" in the claims.

The plain meaning of the term "corresponding to" is somewhat expansive, and implies a relationship between the entities that "correspond" to each other. This expansive meaning is preserved in Mount Hamilton's proposed construction. For example, The American Heritage® Dictionary of the English Language defines "corresponding" as follows – "Having the same or nearly the same relationship." *See* Bjurstrom Decl., at Ex. 8.

In context, this recitation of the disputed term with the proposed construction would read as follows: "computer program modules **relating to** a website". This interpretation is consistent with the context in which the disputed term appears. The same is also true for all of the related claims using the same disputed term. Therefore, the plain meaning of the words (as evidenced by the extrinsic evidence), the context of the recitation, and the intrinsic evidence support the construction of "corresponding to" as meaning "relating to." Accordingly, the Court should adopt Mount Hamilton's proposed claim construction.

I.     **Responsive to a First Restaurant/Business of the Set of Restaurant/Businesses Having a Different Non-Peak Demand Period than a Second Restaurant/Business of the Set of Restaurant/Businesses**

| Claim | Mount Hamilton's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| Claims 1, 8, 11, 14<br><br>the incentive module is configured such that **"responsive to a first restaurant/business of the set of restaurant/businesses having a different non-peak demand period** | "taking into account that different restaurants/businesses can have different non-peak demands" | "as a result of detecting that a first [restaurant/business] has a different non-peak period than a second [restaurant/business]" |

| than a second restaurant/business of the set of restaurants/businesses" the incentive module concomitantly presents to the user via the website | | |
|---|---|---|

Mount Hamilton's proposed construction is consistent with the plain meaning of the words in the phrase and the context in which the phrase is used in the claims. Further, it is supported by intrinsic evidence, including the specification and the '334 Prosecution History.

The parties' dispute is primarily centered on the meaning of "responsive to." Mount Hamilton's proposed construction would essentially interpret this phrase as meaning "taking into account." This is consistent with the plain meaning of these words, as an action taken "responsive to" a condition (*e.g.*, a first restaurant of the set of restaurants having a different non-peak demand period than a second restaurant of the set of restaurants), would "take into account" the condition.

The specification provides ample support for Mount Hamilton's proposed construction, as several different implementations in which restaurants may offer incentives with different restrictions to take into account their different non-peak demand periods are recited therein. *See* Bjurstrom Decl., at Ex. 4, *e.g.*, 2:23-30; 4:32-55; 8:15-27; and 9:20-25; *see also* Sections IV.A & IV.B herein. The '334 Prosecution History also supports the proposed construction, in that the Examiner also made it clear that restaurants could have different non-peak demand periods. *See* Sections IV.A & IV.B herein.

Therefore, Mount Hamilton's proposed construction is consistent with the plain meaning of the phrase, and is supported by the specification and the '334 Prosecution History. Accordingly, the Court should adopt Mount Hamilton's proposed claim construction.

**J.    User Requests are Received for Incentives for Dining/to Purchase a Service**

| Claim | Mount Hamilton's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| Claims 1, 8, 11, 14 | | |

| a request module configured to present an interface to a user via the website through which **"user requests are received for incentives for dining"** at restaurants | "information about incentives that a user is interested in receiving" | "Submission[s] sent by a user for incentives, which can be accepted or rejected by a restaurant/business" |
| --- | --- | --- |
| computer program modules configured to present an interface to a user via the website through which a **"user request is received for incentives to purchase a service from businesses"** | | |

Mount Hamilton's proposed construction is consistent with the plain meaning of the words in the phrase and the context in which the phrase is used in the claims. Further, it is supported by intrinsic evidence, including the specification and the '334 Prosecution History.

The phrase "user request[s] are received for incentives" should be construed according to the plain meaning of the terms, which is supported by the intrinsic evidence, including the specification and the '334 Prosecution History. A request for something typically includes information that identifies the thing or things being requested. So, a request for incentives would be information about the incentives requested, or that the user is interested in receiving.

This construction is supported in the specification. For example:

> This embodiment enables the user to input **information sufficient to enable the system to determine what incentives to make available to the user**. For example, a user may submit one or more incentive requests for one or more selected restaurants where each selected restaurant may determine whether to accept a user's request and provide a dining incentive.

*See* Bjurstrom Decl., at Ex. 4, 11:50-56 (emphasis added). This section makes it clear that a request for incentives includes information about the incentives that the user would like to receive (*i.e.*, information sufficient to enable the system to determine what incentives to

1    make available to the user), and that the information is received from the users (*i.e.*, this

2    embodiment enables the user to input information…).  As such, the specification supports the

3    proposed construction.

4        Moreover, the '334 Prosecution History supports the proposed construction.   In

5    particular, the Response dated September 23, 2010, indicates the patentee understood

6    incentive requests to be information received from users about the incentives the users are

7    interested in receiving. *See* Bjurstrom Decl., at Ex. 5.  As is indicated in the Interview

8    Summary mailed July 14, 2010, the Examiner agreed that U.S. Patent No. 7,069,228 to Rose

9    ("Rose") does not disclose, teach, or suggest receiving "incentive requests" from users and

10   that any description of distributing coupons or discounts to users in the cited sections of Rose

11   is accomplished via mass email, without reception of an "incentive request" from a user.  *See*

12   *id.*, at July 14, 2010 Interview Summary, p. 7.

13       Thus, Mount Hamilton's proposed construction is consistent with the plain meaning

14   of the terms, and is supported by the specification and the '334 Prosecution History. The

15   Court should adopt Mount Hamilton's proposed construction.

16   **V.      CONCLUSION**

17       Mount Hamilton's proposed constructions for the identified limitations of the '334

18   Patent comport with the plain meaning of the terms and the intrinsic evidence, clearly depict

19   the patentee's invention and comply with binding Federal Circuit precedent.   Mount

20   Hamilton respectfully requests that the Court enter an Order adopting Mount Hamilton's

21   proposed constructions, as set forth herein and in the Joint Claim Construction Chart and

22   Prehearing Statement as amended and filed on March 4, 2013.

23   Dated:  March 4, 2012                    Respectfully Submitted,

24                                            CALLIE A. BJURSTROM
25                                            JENNA F. KARADBIL
                                             **PILLSBURY WINTHROP SHAW PITTMAN**
26                                           **LLP**

27                                           By:   /s/ Callie A. Bjurstrom
                                             Callie A. Bjurstrom
28                                           Attorneys for Plaintiff  MOUNT HAMILTON
                                             PARTNERS, LLC

1

**<u>CERTIFICATE OF SERVICE</u>**

2     I hereby certify that on Monday, March 4, 2013, I caused a copy of the foregoing

3  **MOUNT HAMILTON'S OPENING CLAIM CONSTRUCTION BRIEF** to be served

4  upon the following counsel in the manner described below:

5  Via the Court's CM/ECF system:

6                              /s/Callie A. Bjurstrom
                              Callie A. Bjurstrom

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28