# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| **MOUNT HAMILTON PARTNERS, LLC,** | § | C.A. No. 3:12-cv-01698-SI |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| **GOOGLE INC.,** | § | |
| | § | |
| Defendant. | § | |

### DEFENDANT GOOGLE INC.'S FIRST SET OF INTERROGATORIES TO PLAINTIFF MOUNT HAMILTON PARTNERS, LLC

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Google, Inc. ("Google") hereby requests that Plaintiff Mount Hamilton Partners, LLC ("MHP") answer the Google's First Set of Interrogatories (the "Interrogatories") as follows, under oath, within thirty (30) days after service of the Interrogatories, in accordance with the Definitions and Instructions set forth below:

### DEFINITIONS

1.  "Plaintiff," "MHP," "you," and "your" mean the Plaintiff Mount Hamilton Partners, LLC. and all affiliates of MHP, including without limitation wholly owned subsidiaries, and their past and present officers, directors, employees, representatives, and/or agents.

2.  "'334 patent" and "Patent-in-Suit" mean United States Patent No. 7,904, 334.

3.  "Related patents/applications" means (a) all divisional, continuation, and continuation-in-part applications of any of the applications from which the '334 patent issued, and any application that shares the same or substantially similar specification, or a portion thereof, as the '334 patent; (b) all patents issuing from the applications described in (a); (c) all

reissues and reexaminations of the '334 patent or any of the patents described in (b); and (d) all foreign counterpart patent applications and foreign counterpart patents to any of the patents or applications described in (a) or (b) above.

4. "Claimed subject matter" means any instrumentality and/or other subject matter allegedly covered by one or more claims of the '334 patent.

5. "Asserted claim(s)" means any claim(s) MHP contends are infringed by Google.

6. "Instrumentality" means any machine, manufacture, apparatus, device, system, software, process, or method which is designed to function together electrically, mechanically, chemically, or otherwise, to achieve a particular function or purpose, including those offered for sale, sold, imported, or under development.

7. "Prior art" means all publications, patents, products, specimens, uses, sales, offers for sale or other activities relating to the subject matter of a patent and having or occurring at a date such as to be material to the patentability of a patent and/or potentially relevant under any subsection of 35 U.S.C. § 102 or 35 U.S.C. § 103.

8. "PTO" means the United States Patent and Trademark Office.

9. "Secondary considerations" shall have the same meaning as the term is used in *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966) and subsequent judicial decision in reference to considerations that may be used by a patentee in an attempt to rebut a showing of obviousness under 35 U.S.C. § 103, and include "commercial success," "long-felt need," "failure of others," "commercial acquiescence," and "unexpected results."

10. "Document" shall have the meaning accorded by Rule 34(a) of the Federal Rules of Civil Procedure including, but not limited to all of the matters defined in Rule 1001 of the Federal Rules of Evidence and any written, printed, typed, recorded, magnetic, punched, copied,

graphic, or other tangible thing in which information may be embodied, translated, conveyed, or stored.  If a draft document has been prepared in several copies that are not identical, or if the original identical copies are no longer identical due to subsequent notation, each non-identical document is a separate document.

11. "Thing" shall have the full meaning ascribed to it by the Federal Rules of Civil Procedure.

12. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), and encompasses every medium of information transmittal, including but not limited to oral, written, graphic, and electronic communication.

13. "Person" means an individual, proprietorship, partnership, firm, corporation, association, governmental agency, or other organization or entity.

14. "Employee" means any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the designated entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

15. "Accused Product" means any of Google's instrumentalities that MHP contends infringe any of the asserted claims of the '334 patent, including without limitation those instrumentalities identified in your Infringement Contentions to Google.

16. "Include" or "including" are to be read as followed by the phrase "without limitation," so as to acquire the broadest meaning possible.

17. "Concern," "concerning," "evidence," "evidencing," "relating to," "relate to," "relates to," "related to," "referring or relating to," "referring to," "regarding," and "refer or relate to" shall be construed broadly to mean in whole or in part alluding to, responding to, concerning, relating to, connected with, involving, commenting on, in respect of, about,

associated with, discussing, evidencing, showing, describing, reflecting, analyzing, summarizing, memorializing, consisting of, constituting, identifying, stating, tending to support, tending to discredit, referring to, or in any way touching upon.

18. "And" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

19. "Any" and "each" should be understood to include and encompass "all."

20. Where appropriate, the singular form of a word should be interpreted in the plural and vice versa, to acquire the broadest possible meaning.

21. Google's use of terms, phrases, and definitions is for convenience and no term, phrase, or definition shall be construed as an admission by Google.

## **INSTRUCTIONS**

1. The specificity of any later interrogatory should not be construed to limit the generality or reach of these interrogatories. Nor should the specificity of these interrogatories be construed to limit the generality or reach of any later interrogatories.

2. Your answer must include all information concerning the matters inquired about available to you, to your attorney or attorneys or other agents, and to investigators or other agents for you and your attorney or attorneys.

3. If you cannot answer any interrogatory fully and completely after exercising due diligence to make inquiry and secure the information necessary to do so, please so state and answer each such interrogatory to the fullest extent you deem possible, specify the portion of each interrogatory that you claim to be unable to answer fully and completely, state the facts

upon which you rely to support your contention that you are unable to answer the interrogatory fully and completely, and state what knowledge, information, or belief you have concerning the unanswered portion of each such interrogatory.

    4.    Whenever you are requested to "identify all evidence" by any of the interrogatories herein, you shall: (i) in the case of a written or electronic communication, specify (a) the name of each individual who signed it or under whose name it was issued, (b) the name of each individual to whom it was addressed and the name of the individual who received it, (c) the date the document bears, (d) the title of the document, and (e) a description of the substance of the document with sufficient particularity that it can be identified in a Motion to Compel Production of Documents, or, in lieu of the foregoing, you may produce the document itself; and (ii) in the case of an oral communication, identify: (a) the individuals involved, (b) the date of the communication, (c) the location at which the communication occurred, and (d) the contents of such communication.

    5.    Whenever you are requested to "identify" an individual by any of the interrogatories herein, you shall specify the full name, present position and business affiliation, last known business or residence address, and last known telephone number of such individual.

    6.    Whenever you are requested to "identify" an entity, state its full name, the present or last known address of its principal office or place of business, and the type of entity (e.g., corporation, partnership, unincorporated association).

    7.    If you claim that the attorney-client privilege or any other privilege or protection is applicable to any written or electronic communication, you shall identify the communication, state the subject of the communication; state the privilege or protection claimed; and provide

sufficient information concerning the communication and the circumstances thereof to explain the claim of privilege or protection and to permit the adjudication of the propriety of the claim.

8. These interrogatories shall be continuous in nature. If you subsequently obtain information that renders your answers to these interrogatories incomplete or inaccurate, you are to amend your answers to make them complete and accurate.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Separately for each asserted claim of the patent-in-suit, identify all alleged dates of conception, any subsequent diligence until reduction to practice, any dates of actual reduction to practice of the claimed invention, the date of first constructive reduction to practice of the claimed subject matter defined by the claim, and all persons who were involved in connection with such conception, diligence, or reduction to practice, stating in detail all factual bases supporting MHP's identification of each such date, and identifying all persons, documents, and tangible things corroborating each such date.

**INTERROGATORY NO. 2:**

Describe in detail all prior art known to MHP that is possibly relevant, or that has been identified by others to be relevant, to the patent-in-suit (including art disclosed in the prosecution history), including, without limitation any sales, offers for sale, publications, and uses of the subject matter covered by each claim of the patent-in-suit, and separately as to each item of prior art identify all persons that were aware of each item of prior art and state the date that MHP became aware of each item of prior art; the circumstances under which MHP became aware of each item of prior art; and whether, when, and in what manner each item of prior art was disclosed to the PTO during the prosecution of the patent-in-suit.

**INTERROGATORY NO. 3:**

For each Accused Product, describe the circumstances leading up to the allegation that Google allegedly infringes the patent-in-suit, including the date on which MHP first became aware of the Google's Accused Products (and identify all documents relating to such awareness and all persons with knowledge of such awareness); the date on which MHP first considered Google's accused products to be an alleged infringement of the patent-in-suit (and identify all

documents relating to such consideration and all persons with knowledge of such consideration); and all actions taken by or on behalf of MHP to investigate or pursue its beliefs of alleged infringement (including documents reflecting or reporting any tests or analyses performed on the Accused Products prior to filing the complaint for purposes of determining whether those Accused Products allegedly infringe the patent-in-suit).

**INTERROGATORY NO. 4:**

Separately for each asserted claim of the patent-in-suit, describe in detail the legal and factual bases for MHP's allegation that Google infringes each asserted claim and that Google's infringement was willful, including without limitation: the date on and manner in which Google was first notified or became aware that it was allegedly infringing each patent by practicing the allegedly infringing activity; all facts upon which MHP bases it belief or contention that Google knew that such activity was infringing each asserted claim and that such infringement was willful; and identify all documents supporting such allegations and the persons most knowledgeable about such allegations.

**INTERROGATORY NO. 5:**

Identify and describe each product that MHP or any other assignee, or the inventor(s), has ever made, sold, offered for sale, or licensed that uses or embodies the subject matter of any claim of the patents-in-suit, and for each such product state the name of the manufacturer, seller, and/or licensee; the date each such product was sold, offered for sale and/or licensed; whether, how, and to what extent the total number of such products were marked with the number of the patent-in-suit; and whether the product is currently being sold, and if it is not, when it was last sold.

**INTERROGATORY NO. 6:**

Identify all agreements or offers potentially concerning any rights, title, or interest in the '334 patent including assignments, trust documents, marital property distribution agreements, legal pleadings, licenses, offers to license, settlement agreements, covenants not to sue, and agreements or offers relating to any absolute, contingent, potential or any other right to a share in any recovery MHP may obtain in connection with the '334 patent, including without limitation any agreements between or involving MHP, Innovation Management Sciences, or Unifi Scientific Advances, and describe in detail the circumstances of each agreement or offer, including the dates, parties, instrumentalities, terms, proposed consideration, and/or agreed consideration.

**INTERROGATORY NO. 7:**

Separately for each asserted claim of the '334 Patent, state all facts and identify all documents, and all persons competent to testify with respect thereto, upon which MHP may rely for proof of secondary considerations under 35 U.S.C. § 103 or to support any contention that the alleged inventions of the '334 Patent are not obvious, including but not limited to whether the subject matter of any claim allegedly satisfied a long felt need in the art to which it pertains, whether the industry failed to solve problems that allegedly are solved by the subject matter of any claim, whether experts in the industry allegedly expressed skepticism relating to the subject matter of any claim, whether the subject matter of any claim allegedly has been a commercial success (including through licensing); whether the industry allegedly has recognized the significance of the subject matter of any claim, whether the subject matter of any claim allegedly has been copied by others in the industry, and whether the subject matter of any claim allegedly achieved unexpected results.

**INTERROGATORY NO. 8:**

Describe in detail MHP's allegation that it has been damaged by Google's allegedly infringing conduct, including the type and amount of each element of damages (e.g., lost profits or a reasonable royalty) MHP intends to seek against Google, and an explanation of the basis for and methodology used to calculate such amounts, including the basis for determining a reasonable royalty, the reasonable royalty determined, the basis for determining the dollar amount which is multiplied by the reasonable royalty to determine damages, the dollar amount used as the multiplier, the basis for any claim for nonconsequential damages such as attorneys fees, a description of any supporting facts and an identification of all persons with knowledge thereof and all documents and things referring or relating thereto.

DATED:  October 12, 2012                    **PERKINS COIE LLP**

                                            By:   __/s/James F. Valentine_____
                                                  James F. Valentine
                                                  James C. Pistorino
                                                  Heather R. Bobkova
                                                  Victoria Q. Smith

                                            Attorneys for Defendant
                                            Google, Inc.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 12, 2012, a true and correct copy of the foregoing was served to the parties via FedEx:

Jenna F. Karadbil
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, New York 10036

Callie A. Bjurstrom
PILLSBURY WINTHROP SHAW PITTMAN LLP
501 West Broadway
San Diego, California 92101

*/s/James F. Valentine*
James F. Valentine
